IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | 3:20-CR-46 |
| | : | |
| MONROE MERRELL, | : | |
| | : | |
| Defendant | : | Judge Gina M. Groh |
| | : | |

**MOTION TO SUPPRESS VERIZON WARRANT ISSUED FOR TARGET NO. 240-267-0488 AND USE OF THE VERIZON EVIDENCE BY THE FBI CELLULAR ANALYSIS TEAM (CAST)**

Monroe Merrell, through counsel, respectfully moves this Court to suppress evidence obtained pursuant to a warrant issued and served upon Verizon for cell phone data the government believes was generated by Monroe Merrell during February 1 through May 31, 2020. In making this Motion, Mr. Merrell relies on his Fourth Amendment right to be secure against unreasonable searches and seizures. U.S. CONST. amend. IV.

In support of this Motion, Mr. Merrell states as follows:

1. Mr. Merrell is charged with serious felonies relating to three homicides. The prosecution alleges that he participated in the March 18, 2020, homicide of J.R. and the April 2020 homicides of H.G. and D.T. Docket ("Doc.") 25.

2. This motion concerns a search warrant issued by a West Virginia State Magistrate on October 20, 2020. The warrant is attached to this motion as **Exhibit 1**.

3. According to Sgt. Holz and the FBI, the investigation reveals the phone was used by Monroe Merrell. **See Exhibit 2.** ("The investigation indicated that this telephone

1

number was utilized by MONROE MERRELL")[1]

4. The warrant requested that Verizon produce the following:

Target Number: 240-267-0488

The records listed below for the target number for the period of ***February 1, 2020 until May 31, 2020*** (emphasis supplied):

    1. All Call Detail Records, SMS Records, MMS Records, and Data Records, to include all related Cell Site Data

    2. All Location information including estimated or known locations, commonly referred to as an RTT(Round Trip Timing), EVDO, ALULTE, and levdort report

    3. Any information on file in reference to the current subscriber, to include billing information, activation information, point of purchase, date and time of purchase, and device information.

    4. Any document, files, or media currently in the possession of Verizon; Attn: VSAT in reference to the above listed customer number.

5. The affiant for the search warrant was Sgt. Steven Holz of the Jefferson County Sheriff's Department. *See id.* at 1–2.

6. The warrant further requested production of the following:

39. ***The records requested for the Target Device are necessary for investigators to determine if David Sanford and the user of the Target Device were located in the vicinities of the incidents described within this affidavit.*** This is achieved by analyzing the cellular towers and sectors utilized by the Target Device and previously obtained cellular records. The records will also help establish the user for each device, which is necessary for evidentiary purposes in potential future proceedings, by analyzing the phone numbers in contact with the Target Device.

40. Information is being sought for the period of ***February 1, 2020 through May 31, 2020.*** This period encompasses the duration of the crimes described in this affidavit including ***before, during, and after*** the crimes occurred. Often times by limiting the scope of the period

---

[1] If the government alleges that the cellphone in question belonged to a criminal defendant in an application for a search warrant or in a search warrant affidavit, the allegation alone is sufficient to provide that defendant with standing to file a motion to suppress. *United States v. Baker*, 563 F. Supp. 3d 361, 374 (M.D. Pa. 2021).The filing of the motion is not an admission of ownership or possession and may not be used against the filing defendant at trial. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 976, 19 L. Ed. 2d 1247 (1968).

      for which records are sought, investigators are unable to identify *a pattern of life for a suspect* and may interpret data for a single day incorrectly when/if compared a wider period of time. By requesting the complete period of records, your affiant believes investigators will be able to identify a pattern of life for the user of the Target Device, which will reveal whether the person regularly frequents the incident locations or only happened to be present in the vicinities during the times of each occurrence.(emphasis added)

7. As set forth below, the evidence seized pursuant to this warrant should be suppressed as the warrant (1) was not supported by probable cause and (2) was temporally overbroad.

8. The evidence obtained by the warrant was given to the FBI Cellular Analysis Survey Team to prepare a report for use at trial analyzing account records and showing the mobile device's location on March 18, 2020. The Report is dated May 9, 2025 and was uploaded to USAFX by the government and made available for the defense on May 14, 2025.

**1. The Fourth Amendment Probable Cause and Particularity Requirements.**

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). In other words, the moving party must prove a "legitimate expectation of privacy [in a searched location] that would entitle him to raise a Fourth Amendment objection to its search." *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *United States v. Gualtero*, 62 F. Supp. 3d 479, 482 (E.D. Va. 2014).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. CONST. amend.

IV. Specifically, the second clause of the Amendment requires that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* These requirements of probable cause and particularity are designed to work together to prevent indiscriminate searches. *See Payton v. New York*, 445 U.S. 573, 583 (1980) ("It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment."); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) (noting that "the central concern underlying the Fourth Amendment" is "concern about giving police officers unbridled discretion to rummage at will among a person's private effects.").

The United States Supreme Court has emphasized the importance of the particularity requirement for protecting against general warrants. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 197 (1927). "The particularity requirement has three components. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the 'items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013) (citations omitted); *see also United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) ("The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant.").

The purpose of the Fourth Amendment's warrant clause is to ensure that "those searches

4

deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "[T]he specific evil" in this case "is the 'general warrant' abhorred by the colonists, and the problem is not the intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Coolidge*, 403 U.S. at 467; see also *Arizona v. Grant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects."); *United States v. Young,* 260 F. Supp. 3d 530, 546 (E.D. Va. 2017) ("The Framers included the particularity requirement to end the practice of issuing general warrants[.]"). The Constitution limits law enforcement's rights to search only "the specific areas and things for which there is probable cause to search," and requires "that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "'[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.'" *Galpin*, 720 F.3d at 446 (quoting 2 W. LAFAVE, SEARCH AND SEIZURE § 4.6(a) (5th ed. 2012)). "It is not enough that the warrant makes reference to a particular offense; the warrant must 'ensure[] that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" *Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009) (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)) (alterations in original).

### 3. Temporal Overbreadth

If the government is aware of the relevant time-period suspected criminal activity took place but does not limit or otherwise justify the time frame in which information should be seized, the warrant becomes "indistinguishable from the general warrants repeatedly held by this court to

5

be unconstitutional." *United States v. Holcomb*, 132 F.4th 1118, 1133-35 (9th Cir.2025).

The importance of a time limitation was discussed recently by the Fourth Circuit concerning warrants that seek social media information. "This total lack of a time period in a social media warrant raises a problem. As our society moves further into the digital age, Facebook and other social media accounts are beginning to contain decades of personal information and communications, often going back to an account holder's early teenage years. These social media accounts, much like cell phones, frequently contain "a broad array of private information never found" during a traditional search of a home." *United States v. Zelaya-Veliz*, 94 F.4th 321, 340 (4th Cir.), cert. denied, 145 S. Ct. 571 (2024). In affirming the defendant's conviction and sustaining the warrant, the Fourth Circuit found it unnecessary to impose a temporal limitation in the social media context since it found the motion to suppress had been properly denied because the good faith exception to the exclusionary rule applied to the novel question presented by the social media warrant before the court.

### 4. The Verizon Search Warrant Lacked Probable Cause and Was Temporally Overbroad.

The Verizon Warrant and Affidavit was designed to obtain evidence tying Monroe Merrell to the murders that occurred on March 17-18, 2020 and April 6-7, 2020 by locating a mobile device law enforcement believed was his. Sgt. Holz alleged in the Verizon affidavit that Maryland State Police obtained a search warrant for the residence of David Sanford and Emily Day located at 301 East Main Street in Westminster, Maryland including their vehicles parked at that location. Maryland State Police executed the search warrant and David Sanford was located and arrested. Computers and cellphones were seized under the warrant and released to Sgt. Holz.

According to the Affidavit, Investigator Boober of the Jefferson County Sheriff's Department conducted a forensic examination on Emily Day's cellular phone. Included in his

6

findings were call logs showing that Emily Day had a contact named "Phone 2" with phone number 717-680-2251. Additionally, all of the calls made to or from this number were deleted from her call logs on the device. Sgt. Holz checked this phone number in the Call Detailed Records that were obtained from Emily Day's service provider and saw that on March 18, 2020, between 0335 hours and 0516 hours, there were several calls made to and from this number.

During a proffer session with Emily Day and her attorney, Emily Day stated that David Sanford had a 2nd phone number that he used for selling drugs. Additionally, she stated that she called this number in the early morning hours when they were transporting Jonathan Riddle and David Sanford flipped out telling her that they can track his location.

Based on the above, Holz obtained a search warrant for historical cellular records pertaining to David Sanford's cellular phone number 717-680-2251. Upon review of the records, Holz alleged the device associated with this number was in Carroll County, Maryland on the early morning hours of March 18, 2020. The device traveled from Carroll County, Maryland into West Virginia and to the area that Riddle's body was located. Between approximately 0230 and 0600, there were numerous calls between this number and phone number 240-267-0488. Additionally, according to the Affidavit, informants previously reported that Sanford and Merrell were communicating with their "flip" phones during the trip to West Virginia.

Holz determined that David Sanford's 2nd phone number (717-680-2251) was assigned to a flip phone by checking the associated IMEI (International Mobile Equipment Identity). The IMEI provided by Verizon was 015400008983632 was also determined to be an Alcatel "flip phone." Based on the above, Holz believed that Monroe Merrell was using a cellular phone with the number of 240-267-0488 to coordinate and communicate with Sanford during the trip to West Virginia during the early morning hours of March 18, 2020.

Despite Sgt. Holz's narrow inquiry to obtain CLSI data for 240-267-0488 to determine whether the mobile device was traveling from Maryland to West Virginia during the early morning hours of March 18, 2020, Sgt. Holz expanded his request to include February 1, 2020 through May 31, 2020, despite having no probable cause to support a CLSI search beyond the early morning hours of March 18, 2020.

Sgt. Holz's desire to establish a "pattern of life" for the user/possessor of the target phone "before, during and after the crimes occurred" is exactly the kind of "rummaging" that caused the enactment of the Fourth Amendment in the first instance. "At its core, the Fourth Amendment protects against general warrants that authorize "exploratory rummaging in a person's belongings ... by requiring a particular description of the things to be seized." *United States v. Williams,* 592 F.3d 511, 519 (4th Cir. 2010)

A CSLI warrant must be sufficiently particularized and not temporally overbroad. The warrant must specify the government's purpose in obtaining the data and why it is relevant to the investigation in question. Depending upon what the affiant articulates in his affidavit accompanying the application for the warrant, a period greater than the date of the crime may or may not be reasonable. For example, if the government were attempting to find an individual, his CSLI for a period greater than the day the crime occurred may warrant a search before and after the date of the crime. *United States v. Disla Ramos,* No. 22-CR-431 (LJL), 2022 WL 17830637, at *10 (S.D.N.Y. Dec. 21, 2022). In *Disla-Ramos,* the court also found CSLI data from before and after the date of a robbery was necessary to identify the defendants were the masked robbers on a surveillance tape and to corroborate information from informants that the defendants had committed the robbery, By showing the defendants' continuing relationship before and after the robbery, the argument as to their identity would be strengthened.

In this case, Sgt. Holz articulated only a need to show a "pattern of [target number user's/owner's] life" in support of searching CSLI data "before, during, and after the crimes occurred" despite only articulating CSLI historical data was necessary to show the location of user's/owner's device and target number *during the early hours of March 18, 2020*. (emphasis supplied). There simply was no justification articulated by Sgt. Holz to support the need for CSLI information for any period before and after March 18, 2020 in the affidavit that accompanied the Verizon warrant.

The Verizon warrant's lack of probable cause and temporal overbreadth cannot be saved by the "good faith" exception after the Supreme Court's decision in *Capenter v. United States*, 585 U.S. 296, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2028). The failure to articulate reasons for obtaining CSLI from February 1 through May 31, 2020 in a warrant obtained after *Carpenter* cannot be saved by "good faith." Under no circumstances would a reasonable law enforcement officer believe he would not have to comply with the particularity and probable cause standard in obtaining a warrant for historical CSLI data after *Carpenter*. "While *Carpenter* is obviously controlling going forward, it can have no effect on [the defendant's] case. The exclusionary rule's "sole purpose ... is to deter future Fourth Amendment violations." *Mero v. United State*s, No. 4:17CR13, 2021 WL 3021942, at *6 (E.D. Va. July 16, 2021). If a law enforcement officer obtains a warrant that is overly broad concerning the time-period for a seizure, the officer may not rely upon the "good faith exception" to justify the warrant. "First, … any warrant provision that is wholly lacking in any corresponding limitation is overbroad and therefore facially deficient under the Fourth Amendment. Second, an officer who relies on any such provision while executing a search warrant does not act in good faith. *Holcomb* at 1135.

5. **The CAST Report should be suppressed.**

9

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search…" *Murray v. United States,* 487 U.S. 533, 536 (1988) (citing *Weeks v. United States*, 232 U.S. 383 (1914)). It also prohibits officers from testifying as to knowledge acquired during an unlawful search. Id. (citing *Silverman v. United States,* 365 U.S. 505 (1961)).

"Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search…" Id. Such derivative or indirectly acquired evidence is often referred to as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (internal quotation marks omitted).

The information which Sgt. Holz obtained by the Verizon warrant for Target No. 240-267-0488 has been used by the FBI Cellular Analysis Survey Team (CAST) to analyze and illustrate the location of the device Holz claimed was possessed by Merrell on March 18, 2020, between 2:00 am and 7:00 am for use at trial. The CAST report and any testimony concerning the location of the device should be suppressed.

## CONCLUSION

WHEREFORE, Mr. Merrell respectfully moves this Honorable Court to suppress all evidence obtained by the Verizon warrant issued for target number Target No. 240-267-0488, the use of the evidence obtained by the FBI Cellular Analysis Team and any testimony concerning the location of the device or calls made to and from the device during the early morning hours of March 18, 2020.

Respectfully submitted,

MONROE MERRELL

s/ James A. Swetz, Esq.
Florida Bar No. 839668
2312 Wilton Drive, Ste. 23
Wilton Manors, FL. 33305
Office: 954-800-6450

Douglas Sughrue
West Virginia Bar No. 11452
429 Fourth Avenue, Suite 501
Pittsburgh, PA 15129
Office 412-391-1629
dsughrue@sughruelaw.com

*Counsel for Monroe Merrell*

## CERTIFICATE OF SERVICE

I, Douglas Sughrue, Esq., hereby certify that on June 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ Douglas Sughrue